United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FRANCIE E. MOELLER, et al.,

    Plaintiffs,

v.

TACO BELL CORP.,

    Defendant.

No. C 02-5849 MJJ

**ORDER**

## INTRODUCTION

Plaintiffs seek a ruling that Defendant Taco Bell Corporation's violations of dimensional standards required under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, may only be justified as "conventional building industry tolerances for field conditions," and may not be excused as "de minimis" or analyzed as "equivalent facilitation." The parties also dispute whether the Plaintiff class has standing to challenge violations of accessibility standards governing 1) the continuous delivery of toilet paper and 2) the usability of hardware with one hand without tight grasping, pinching, or twisting.

## FACTUAL BACKGROUND

In their Joint Supplemental Case Management Statement dated August 23, 2004, the parties agreed to a procedure to resolve the equitable issues in this case. The procedure called for counsel to meet and confer about more than 630 accessibility elements at each of Defendant's more than 200 company-owned restaurants in California. To assist in the meet and confer process, the parties have worked together to identify and reach agreement on a non-exclusive list of legal principles over

which the parties disagree.

The parties have briefed three issues for the Court, and each of these issues concern whether there can be liability or injunctive relief for specific accessibility elements that vary from the Department of Justice Standards for Accessible Design (the "DOJ" standards) or Title 24 of the California Code of Regulations, but nonetheless provide equal or greater access to disabled individuals. Defendant asserts that deviations from the DOJ and California Standards that exceed applicable construction tolerances can be excusable as either "de minimis" or "equivalent facilitation." Plaintiffs urge the Court to reject the "de minimis" exception in its entirety, and to limit the "equivalent facilitation" exception to only "alternative designs and technologies."

In addition to the legal principles on which the parties seek the Court's guidance, the parties also seek a ruling on a standing issue – whether the certified class has standing to seek equitable relief regarding two accessibility elements currently being surveyed by the Special Master: 1) the continuous delivery of toilet paper; and 2) the usability of hardware with one hand without tight grasping, pinching, or twisting. Plaintiffs contend that because many class members have disabilities that affect their hands and arms, these two accessibility standards are appropriate for adjudication on a class-wide basis. Defendant asserts that because the Plaintiff class is defined as individuals with disabilities who use wheelchairs or scooters for mobility, the class only has standing to pursue equitable relief for those accessibility standards that specifically target individuals who use wheelchairs and scooters for mobility.

## ANALYSIS

**A.  Equivalent Facilitation**

Defendant argues that the "equivalent facilitation" provision allows facilities to bypass the technical requirements laid out in the ADA when alternative designs and technologies will provide equivalent or greater access to and usability of the facility. According to Defendant, there are only two requirements for an equivalent facilitation: 1) it is different from DOJ Standards; and 2) it provides equal or greater access to the subject facilities. Plaintiffs assert that an "equivalent facilitation" must be an alternative design and technology, and covered elements that simply deviate from the standards do not qualify.

2

1    Section 2.2 of the DOJ standards reads as follows:

> Equivalent Facilitation. Departures from particular technical and scoping requirements of this guideline by the use of other designs and technologies are permitted where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility.

When initially proposed, section 2.2 read, "Departures from particular technical and scoping requirements of this guideline by the use of other *methods* are permitted where the alternative *methods* used will provide substantially equivalent or greater access to and usability of the facility." 56 Fed. Reg. at 2327 (emphasis added). Following a notice and comment period, the phrase "design and technologies" was substituted for the word "methods." The Access Board explained that "[t]he purpose of the provision is to allow for flexibility to design for unique and special circumstances and to facilitate the application of new technologies." 56 Fed. Reg. at 35,413.

Here, the central dispute between the parties revolves around the language "alternative designs or technologies." Plaintiffs assert that Defendant is attempting to substitute the phrase "alternative designs and technologies" for "different from." Meanwhile, Defendant argues that Plaintiffs' interpretation of the equivalent facilitation exception would deem it only applicable to "new technology."

As an initial matter, the Court disagrees with Defendant's contention that an equivalent facilitation need only be "different from" the DOJ standards. This interpretation is too broad and inconsistent with the plain language of Section 2.2. The fact that the Access Board replaced the word "methods" with "design and technologies" is telling. Defendant's interpretation of Section 2.2 would essentially read this phrase out of the equivalent facilitation exception.

Furthermore, the Court agrees with Plaintiffs that Defendant should not be permitted to use anthropometric or other data to argue that a measurement that merely falls short of the DOJ standards constitutes "equivalent facilitation." Defendant cites no cases in which a noncompliant element was excused as "equivalent facilitation" based on one party's evidence of how many people it accommodated.

A simple example illustrates the inherent problem with Defendant's position. A survey conducted by the Special Master in this case revealed that the height of the side and rear grab bars in

3

the women's restroom of Restaurant No. 2423 was 37 inches, whereas the maximum allowed height is 33 inches. Under Defendant's interpretation of "equivalent facilitation," Defendant could assert, based on an expert's testimony, that a grab bar height of 37 inches actually allows greater accessibility to wheelchair users, and therefore is a "equivalent facilitation." Such an argument is unfounded. In this example, the four-inch deviation from the DOJ standard was not the product of an "alternative design or technology," but rather a grab bar simply being mounted too high.

Furthermore, the Court finds that the "equivalent facilitation" exception was not intended to apply only to "new technology." The ADAAG itself provides various examples of equivalent facilitation which undermine such an approach. For example, while hotels are required to install a text telephone next to a pay phone, the ADAAG permits hotels to keep portable text telephones at the desk, if they are available 24 hours per day, and other conditions are met. This cannot be considered "new technology." Moreover, the "new technology" argument finds no support in the case law. *See Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698, 727 (D. Or. 1997) (rejecting the "new technology" argument, and finding that the use of folding chairs to provide companion seats at a sports arena was an acceptable equivalent facilitation).

Therefore, the Court finds that there are only two requirements for an equivalent facilitation: 1) it is an alternative design or technology; and 2) it provides equal or greater access to subject facilities.[1] It appears that the purpose of the exception is to give architects the flexibility to design facilities that may not strictly comply with the Accessibility Standards but nonetheless provide equivalent facilitation. Moreover, while the exception provides flexibility, it does not prevent strict compliance, as many of the Accessibility Standards are not susceptible to equivalent facilitation. *See id.* at 727-28.

**B. De Minimis Exception**

Defendant has indicated that it will seek to excuse deviations from the DOJ and California Standards as "de minimis." Plaintiffs argue that the Ninth Circuit has rejected such an exception and

---

[1] Indeed, when "[p]roperly read, the 'Equivalent Facilitation' provision does not allow facilities to deny access under certain circumstances, but instead allows facilities to bypass the technical requirements laid out in the [Accessibility] Standards when alternative designs will provide 'equivalent or greater access to and usability of the facility.'" *Caruso v. Blockbuster-Sony Music Entm't Ctr.*, 193 F.3d 730, 739 (3d. Cir. 1999).

4

urges the Court to analyze any deviation from the required standards under the provision for tolerances. Defendants respond that the bright line rule set forth by Plaintiffs is impractical and improvident.

Federal courts do not "sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]." *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982). To proceed in the absence of a case or controversy would involve the Court in rendering a forbidden advisory opinion. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). Here, the application of the "deminimis" defense will vary with the circumstances of the individual accessibility elements in this case. However, Defendant has not provided the Court with a factual record detailing the specific violations of the ADA it believes are "de minimis." Therefore, the Court refrains from ruling on this issue until the factual record in this case is more fully developed.

**C.   Class-Wide Standing for Continuous Delivery of Toilet Paper or Hardware**

Defendant argues that the Plaintiff class does not have standing to seek injunctive relief for inaccessible hardware and inaccessible toilet paper rollers.[2] Defendant asserts that because the definition of the class is limited to individuals who use wheelchairs or scooters for mobility, the class should only have standing to pursue injunctive relief with respect to two kinds of accessibility elements: 1) elements designed to accommodate wheelchairs or scooters; and 2) ancillary elements designed to provide full accommodation for persons who use wheelchairs or scooters for mobility. Plaintiffs respond that because at least one-third of the class will suffer injury in fact if these elements are out of compliance, the class has standing to challenge such violations.

It is Plaintiffs' burden to establish standing to assert their claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). An individual with a disability has "standing to seek relief for any ADA violations . . . affecting his specific disability," and does not have standing to pursue

---

[2]Both the DOJ Standards and the California Standards require certain types of hardware to be "operable with one hand" and not to "require tight grasping, pinching or twisting of the wrist." *See, e.g.*, DOJ Stds. § 4.27.4. Both sets of standards have requirements similar to this that apply to door hardware, faucets, flush controls, and general controls and operating mechanisms. Both the DOJ Standards and the California Standards prohibit toilet paper dispensers "that control delivery or that do not permit continuous paper flow. DOJ Stds. § 4.16.6; Cal. Stds. 11115B.9.3.

1  claims that do not affect his disability. *Steger v. Franco, Inc.*, 228 F.3d 889, 894 (8th Cir. 2000). In
2  evaluating standing in the class context, the Court should "consider those injuries in the context of
3  the harm asserted by the class as a whole[.]" *Armstrong v. Davis*, 275 F.3d 849, 861, (9th Cir.
4  2001).
5       In *Parr v. L & L Drive-Inn Restaurant*, the plaintiff suffered from the disability of non-
6  mobility, and sought relief from barriers that were not related to non-mobility, such as braille sign
7  violations. 96 F. Supp. 2d 1065 (D. Haw. 2000). The *Parr* court concluded that the plaintiff could
8  not prove the requisite "injury in fact." *Id*. at 1082. Accordingly, the court held "that Plaintiff's
9  claims not specifically related to non-mobility must be denied due to lack of standing." *Id*. at 1083.
10 Other courts that have considered the issue are in agreement. *See Delil v. El Torito Rest.*, *Inc*., 1997
11 WL 714866, at *5 (N.D. Cal. Jun. 24, 1997) (holding that a disabled individual cannot "vindicate the
12 rights of disabled persons generally"); *Vandermolen v. City of Roosevelt,* 1997 WL 853505, at *2
13 (W.D. Mich. Oct. 28, 1997) (finding that the standing requirement "exclude[s] claims for relief
14 brought for purely academic reasons"); *Steger*, 228 F.3d at 893-94 (finding that standing exists for
15 the blind only for those ADA violations that necessarily affect a vision impaired person).
16      Here, there is no dispute that the "class as a whole" consists of individuals who use
17 wheelchairs and scooters who have encountered disability discrimination at corporate Taco Bell
18 restaurants in California. However, according to Plaintiffs, 38% of the class have difficulty using
19 their hands to grasp, handle or hold objects, and thus will incur "injury in fact" when they encounter
20 inaccessible toilet paper rollers and hardware. The Court cannot agree. Plaintiffs have not offered
21 any case authority to support their novel proposition that an injury to only 38% of the class is
22 sufficient to qualify as an "injury in fact" to the "class as a whole." Simply stated, the Plaintiff class
23 has not been defined as to encompass persons with limited use of their hands and arms without
24 regard to mobility. Therefore, the Court agrees with Defendant that the continuous delivery
25 requirement is not directly related to mobility, but rather to individuals who have limited use of their
26 hands or arms. Likewise, the hardware standards (doors, lock, flush controls) do not depend on
27 mobility impairments. Accordingly, the Court finds that Plaintiffs have not established standing to
28 challenge violations of the accessibility standards governing these elements.

**CONCLUSION**

For the reasons stated above, the Court finds that there are only two requirements for an equivalent facilitation: 1) it is an alternative design or technology; and 2) it provides equal or greater access to subject facilities. The Court refuses to rule on the application of the "de minimis" exception until the factual record in this case is more fully developed. Finally, the Court finds that Plaintiffs do not have standing to challenge violations of the accessibility standards governing inaccessible hardware and inaccessible toilet paper rollers.

**IT IS SO ORDERED.**

Dated: August_10___, 2005

_____
MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

7