| | |
|---|---|
| CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER<br>Timothy P. Fox, Cal. Bar No. 157750<br>Amy F. Robertson, *Pro Hac Vice*<br>104 Broadway, Suite 400<br>Denver, CO 80203<br>Tel:   303.757.7901<br>Email:   tfox@creeclaw.org | Mari Mayeda, Cal. Bar No. 110947<br>PO Box 5138<br>Berkeley, CA 94705<br>Tel:   (510) 917-1622<br>Fax:   (510) 841-8115<br>Email: marimayeda@earthlink.net |
| LAWSON LAW OFFICES<br>Antonio M. Lawson, Cal. Bar No. 140823<br>6146 Mazuela Drive<br>Oakland, CA 94611<br>Tel:   (510) 878-7818<br>Fax:   (501) 878-7006<br>Email:   tony@lawsonlawoffices.com | THE IMPACT FUND<br>Jocelyn Larkin, Cal. Bar No. 110817<br>125 University Ave.<br>Berkeley, CA 94710<br>Tel:   (510) 845-3473<br>Fax:   (510) 845-3654<br>Email:   jlarkin@impactfund.org |

Attorneys for Plaintiffs

SHEPPARD MULLIN RICHTER & HAMPTON, LLP
Gregory F. Hurley, Cal. Bar No. 126791
650 Town Center Drive, Fourth Floor
Costa Mesa, CA 92626-1993
Tel:   (714) 513-5100
Fax:   (714) 513-5130
Email:   ghurley@sheppardmullin.com

Attorney for Defendant Taco Bell Corp.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| FRANCIE E. MOELLER *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>TACO BELL CORP.,<br><br>          Defendant. | Case No.     C 02 5849 PJH<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>**Date: November 13, 2013**<br>**Time: 9:00 a.m.**<br>**The Honorable Phyllis J. Hamilton**<br>**Courtroom 3, 3rd Floor** |

In preparation for the case management conference currently scheduled to occur on November 13, 2013, the parties jointly submit this Joint Case Management Statement.

## PLAINTIFFS' STATEMENT

Plaintiffs hereby set forth their proposed litigation plan concerning the Named Plaintiffs' damages claims and class injunctive relief.

**Summary.** Plaintiffs explain in detail below the reasons for their proposed case management plan. To summarize that plan, Plaintiffs propose that:

(1) Prior to a trial addressing the Named Plaintiffs' damages claims, this Court permit Plaintiffs to file a summary judgment motion addressing the compliance status of approximately 18 Damages Barriers.

(2) By doing so, the only unresolved factual disputes relevant to damages that will require a jury trial are the compliance status of four Damages Barriers, and the amount of damages to be awarded to the Named Plaintiffs. These limited factual issues can easily be tried in one trial, and much more efficiently than doing so in multiple trials. Further, a single damages trial avoids serious Seventh Amendment concerns that arise from multiple damages trials.

(3) This Court's previous determination that TBC has engaged in 400 violations of accessibility regulations among more than 160 covered restaurants, and has critically deficient accessibility policies in place at all covered restaurants, substantially exceeds the record necessary for entry of a systemwide injunction under numerous Ninth Circuit decisions. Indeed under *Armstrong v. Davis*, 275 F.3d 849, 870 (9th Cir. 2001), entry of a systemwide injunction is "required" in light of these determinations. Therefore a systemwide injunction should be entered without further litigation.

(4) If this Court disagrees and believes that additional findings are necessary before a systemwide injunction can be entered, those findings must be made by the Court and not a jury. In this event, there are a number of legal principles already established by the Court that can be applied to a discrete set of barriers specified below to increase the number of established violations to approximately 600, vastly in excess of the record needed for entry of a systemwide injunction. If the

Court believes that these additional violation determinations are necessary, Plaintiffs propose that the summary judgment motion discussed in step one above include these discrete barriers. In the alternative, this Court can schedule a bench trial to address these barriers.

I.  **Status of Class Injunctive Relief and Damages.**

In their proposed Second Amended Complaint, the Named Plaintiffs seek minimum statutory damages with respect to 37 barriers ("Damages Barriers") in 8 Taco Bell restaurants. In addition, on behalf of the class, Plaintiffs seek injunctive relief requiring TBC to ensure that its restaurants remain in compliance with accessibility regulations in the future. (Plaintiffs do not seek an injunction requiring TBC to bring any elements into compliance as that task was largely accomplished through TBC's efforts to moot class injunctive claims.)

**Status of Named Plaintiffs' Damages Claims:** As a result of both its 2007 partial summary judgment order, and its 2011 Findings of Fact and Conclusions of Law ("FFCL"), ECF 642, this Court has determined that approximately 15 of the 37 Damages Barriers do not comply with accessibility requirements. In addition, approximately 18 other Damages Barriers are, based on undisputed facts, subject to the new construction or alterations standard and thus could be addressed on summary judgment. Only four Damages Barriers involve disputed issues of fact that require resolution by a jury.

**Status of Class Injunctive Relief**: In its August 2007 partial summary judgment order, this Court determined that TBC had committed almost 400 violations of accessibility regulations spread among more than 160 of the 220 restaurants originally covered by this action. *See* FFCL at 52 (citing *Moeller v. Taco Bell Corp.*, 2007 WL 2301778, at *12-15, 20-22 (N.D. Cal. Aug. 8, 2007)). Further, in its FFCL, this Court explicitly held that "TBC's access policies are centralized – policies in place at Taco Bell 4518 are also in place at all other California corporate Taco Bell restaurants." FFCL at 15. It then made specific findings -- based on extensive evidence, including testimony from TBC's Director of ADA Compliance and Rule 30(b)(6) designee -- that TBC's access policies have been and are critically deficient. These findings included that: (1) architectural elements change frequently at these restaurants, and that

TBC has a history of not ensuring that these elements remain in compliance with accessibility requirements when they do change; (2) TBC has a history of not providing training to employees charged with ensuring compliance with accessibility requirements; (3) TBC has not followed its own access policies; (4) TBC has changed its access policies frequently, often for the worse (and thus without an injunction could be changed again in the future); and (5) key current policies give TBC complete discretion to ignore violations. *Id.* at 14-18; 40-43.

Although this Court initially determined in the FFCL that these liability and factual determinations warranted entry of a systemwide injunction, in September 2012, without the benefit of input from Plaintiffs, the Court changed its mind, finding that entry of such an injunction would be premature, but not specifying what additional evidence, if any, was needed before a systemwide injunction was warranted.

## II. Plaintiffs' Proposal as to the Named Plaintiffs' Damages Claims.

Through the summary judgment process, this Court has already determined that a number of Damages Barriers were in violation of accessibility regulations. Plaintiffs propose that this same process be used the determine the compliance status of 18 additional Damages Barriers that are subject to the alterations or new construction standard. The only remaining fact issues for a jury to decide would then be whether the four remaining Damages Barriers violate access regulations, and the amount of damages to be awarded to each Named Plaintiff based on their discriminatory experiences. These issues could easily be resolved in one trial.

This proposal has a number of advantages over a plan that goes directly to trial without a summary judgment motion, or a plan that requires multiple trials.

First, if Plaintiffs are precluded from filing a summary judgment motion, this Court will be required to apply the same analysis using the same standard to any challenges to jury findings on these issues. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (holding that the standard for summary judgment under Rule 56 "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict."). Thus, for example, should Plaintiffs be precluded from filing for summary judgment, and the jury finds

compliant an element for which the Special Master's measurements show noncompliance, this Court would then face a motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), which would require the same analysis as a summary judgment motion. The upshot of skipping the summary judgment step would thus be to unnecessarily prolong the trial without reducing this Court's workload.

Second, multiple damages trials would be very inefficient. For example, multiple trials would require the parties and the Court to engage in the jury selection process multiple times. Fact and expert witnesses would be required to travel to court on multiple occasions to provide testimony on the same subjects in each trial, including for example TBC's financial resources and the cost of removing certain barriers, both relevant to readily achievable barrier removal.

Finally, multiple trials would create substantial Seventh Amendment concerns. Under the Seventh Amendment, a district court "'must not divide issues between separate trials in such a way that the same issue is reexamined by different juries.'" *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1126 (7th Cir. 1999) (citation omitted); *see also Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931) (holding that questions in a single suit can only be tried by different juries if they are "so distinct and separable from the others that a trial of [them] alone may be had without injustice."). This results from the principle that "'inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact.'" *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (citation omitted).

Seventh Amendment concerns would be implicated, for example, if two juries were required to determine if the cost of removal of a particular type of barrier was readily achievable in light of TBC's resources, or whether a type of repair or maintenance task constituted an "alteration" under state or federal law. These serious constitutional issues can be avoided if the Named Plaintiffs' damages claims are tried to a single jury.

**III. Plaintiffs' Position as to Class Injunctive Relief.**

Plaintiffs recognize that this Court determined in September 2012 that entry of a systemwide injunction would be premature. Plaintiffs were not given an opportunity to be heard

on this issue and, respectfully, demonstrate below that a systemwide injunction is warranted based on the liability and factual determinations already made in this case. Indeed, under *Armstrong*, this Court's determination that TBC's deficient policies are in place at all covered restaurants "require[s]" entry of a systemwide injunction. Plaintiffs thus urge this Court to enter a systemwide injunction without incurring the significant additional delay and expense of further litigation.

If this Court believes that additional violations must be established before an injunction can be entered, then Plaintiffs request the opportunity to file a summary judgment motion based on undisputed facts and legal principles already established by this Court. Through this process, hundreds of additional violations can be established. In the alternative, this Court can convene another bench trial to address these issues.

### A. This Court's Previous and Extensive Liability Determinations and Factual Findings Warrant Entry of a Systemwide Injunction.[1]

In its FFCL, this Court held that "'[t]he scope of injunctive relief is dictated by the extent of the violation established. The key question . . . is whether the inadequacy complained of is in fact widespread enough to justify system wide relief.' A court need not address every violation in order to conclude that violations are sufficiently widespread to necessitate a system wide injunction. Rather, a court can enter such an injunction based on evidence that is 'symptomatic' of the defendant's violations, including 'individual items of evidence [that are] representative of larger conditions or problems.'" FFCL at 39 (quoting *Armstrong,* 275 F.3d at 870-71).

Here, this standard is met for two independent reasons: (1) this Court already determined in the exemplar trial that TBC's violations result from deficient centralized policies,

---

[1] Entry of an injunction is mandatory for violations of Title III. *See, e.g., United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497-98 (2001) (holding that when the only remedy provide by a statute is an injunction, "[t]he district court lack[s] discretion because an injunction [is] the 'only means of ensuring compliance.'"); *Moreno v. La Curacao*, 463 Fed. Appx. 669 (9th Cir. 2011) (holding that a finding of a Title III violation was sufficient by itself to entitle the plaintiff to an injunction); *Antoninetti v. Chipotle Mexican Grill*, 643 F.3d 1165, 1172-74 (9th Cir. 2010) (holding that it would be an abuse of discretion for the district court to deny injunctive relief where violations of Title III had been found). Since this Court has held that TBC has committed numerous ADA violations, entry of an injunction is mandatory, and the only question is the scope of that injunction.

and thus under the Ninth Circuit's decision in *Armstrong*, entry of a systemwide injunction is required; and (2) the hundreds of violations found in more than 160 of the 220 restaurants originally at issue constitute symptomatic evidence of systemwide violations, evidence that far exceeds that found in cases in which the Ninth Circuit has affirmed entry of a systemwide injunction.

### 1. This Court's Findings That TBC's Centralized Access Policies Are Critically Deficient Mandate Entry of a Systemwide Injunction.

The Ninth Circuit in *Armstrong* held that "[s]ystem-wide relief *is required* if the injury is the result of violations of a statute . . . that are attributable to policies or practices pervading the whole system." *Armstrong*, 275 F.3d at 870 (emphasis added).

Here, this Court in its FFCL specifically found that TBC's access policies are in place at every covered restaurant, and further held that these policies are, and have been, critically deficient. Thus under *Armstrong*, entry of a systemwide injunction is now required.

Further, the record here is far stronger than that in similar cases in which the Ninth Circuit has affirmed entry of systemwide injunctions based on deficient policies.

For example, in *Clement v. California Department of Corrections.*, 364 F.3d 1148, 1153 (9th Cir. 2004), the Ninth Circuit held that the fact that the deficient policy at issue was in place in just eight California prisons, and was being considered by others, was a sufficient basis for entry of a systemwide injunction covering all prisons. Unlike *Clement*, in which the systemwide injunction was based only on the fact that the deficient policy was in place at a *subset* of covered facilities, the deficient policy here is in place at *all* covered facilities.

This case is also stronger than *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1502 (9th Cir. 1996), in which the Ninth Circuit held that even though there existed proof of only 14 violations, a systemwide injunction was warranted because these violations resulted from a deficient statewide policy. Here, as in *EasyRiders*, the deficient policies are in place at all covered restaurants, but the hundreds of liability determinations already established in this case far exceed the 14 in *EasyRiders*.

## 2. The Numerous and Widespread Violations Already Established by this Court, by Themselves, Warrant Entry of a Systemwide Injunction.

This Court has held that TBC has engaged in almost 400 violations spread among more than 160 of the 220 restaurants originally at issue in this case. FFCL at 52. Under Ninth Circuit precedent, these extensive liability findings provide an independent basis for entry of a systemwide injunction.

For example, in *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1122 n.13 (9th Cir. 2003), the Ninth Circuit affirmed entry of a statewide injunction based on much less substantial evidence than exists here:

> We also reject OSH's claim that the district court abused its discretion in imposing an injunction of state-wide scope. OSH argues that the plaintiffs proffered evidence covering jails in only seven of Oregon's 36 counties and that the district court's findings therefore do not extend to the jails in the other 29 counties. We conclude, however, that the district court's unchallenged findings establish a sufficiently pervasive, systemic and consistent pattern of injury to justify the state-wide sweep of the injunction.

Thus in *Oregon Advocacy Center*, the Ninth Circuit held that a determination that violations existed in just 7 out of 36 counties -- only 24% of the counties at issue -- was a sufficient basis for an injunction covering all of those counties.

Here, this Court has already held that violations existed in more than 160 of the 220 restaurants at issue, more than 70% of the covered restaurants. This is an ample evidentiary basis for a systemwide injunction.

## 3. The Purpose of the Bellwether Trial Scheduled by Judge Jenkins Was to Resolve Common Issues and Had Nothing to Do with the Record Necessary for Entry of a Systemwide Injunction.

In its August 12, 2013 order, this Court asked the parties' views as to whether there is sufficient evidence to warrant entry of a systemwide injunction given that when the case was reassigned to this Court, it was scheduled for a bellwether trial addressing multiple restaurants. Judge Jenkins adopted the bellwether plan at Plaintiffs' urging, at a time when class damages claims were still certified. Plaintiffs made clear at the time that the reason they were suggesting a bellwether trial was not because doing so had anything to do with the evidence necessary for entry of a systemwide injunction, but rather because such a trial would allow the Court to resolve certain issues that were common to all restaurants, such as "the appropriate tolerances

for various elements" and "the extent of Taco Bell's obligation in altered premises" under the ADA. ECF 323 at 2; *see also id.* at 2-3 ("Instead of a lengthy discovery period and trial in which a great deal of time is spent relitigating each of these common issues for over 220 restaurants, Plaintiffs believe that these issues can be resolved most efficiently and quickly through a pilot or bellwether trial of 12 restaurants."). These common issues have been resolved by this Court through the exemplar trial and subsequent FFCL.

### B. To the Extent That the Court Believes That Additional Support Is Necessary for Entry of a Systemwide Injunction, this Support can be Established Through Summary Judgment or a Bench Trial.

If this Courts believes that additional violations must be established to warrant entry of a systemwide injunction then, because injunctive relief is an equitable claim, these violations will need to be addressed and resolved by this Court rather than a jury. Plaintiffs propose that the most efficient method of doing so is through a summary judgment process. In the alternative, the Court can schedule an additional bench trial.

#### 1. Any Further Findings Relevant to Injunctive Relief must Be Made by the Court.

It is black letter law that a party is entitled to a jury on legal claims, but is not entitled to a jury on equitable claims such as a request for an injunction. Furthermore, the question whether a jury right attaches is to be determined as to each particular issue. *See, e.g.*, 9 Fed. Prac. & Proc. Civ. § 2337 (3d ed.) ("One of the most important features of the merger of law and equity accomplished by the Federal Rules is that the right to a trial by jury now extends to particular issues rather than to an entire action.").

Where, as here, a party seeks both legal (*i.e.,* damages) and injunctive relief, a jury determines factual disputes relevant to legal claims, as well as factual disputes that are relevant to both the legal and injunctive claims. Importantly, however, the court, and not the jury, resolves all factual disputes only relevant to injunctive relief, as well as the scope and terms of injunctive relief.[2]

---

[2] *See, e.g.*, *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative
(continued...)

Here, the compliance status of architectural elements in covered restaurants -- other than the few Damages Barriers -- is relevant only to class injunctive claims, and thus must be addressed by the Court.

### 2. A Significant Number of Additional Violations Can Be Established Through Summary Judgment.

To the extent that this Court believes that additional violations – beyond the 400 already established and the handful of additional Damages Barriers – are required to warrant entry of a systemwide injunction (and as set forth above, Plaintiffs do not believe this is the case), this can be accomplished most efficiently through summary judgment. A single summary judgment motion can address the 18 Damages Barriers as to which there are no disputes of fact as described above, as well as the barriers described below relevant to injunctive relief.

This Court has already resolved a number of legal issues, and these principles can be applied to a number of undisputed facts to significantly increase the number of established violations committed by TBC. For example, through summary judgment, the following violations can be established:

> \> This Court has held that restriping a parking lot constitutes an alteration under the ADA (FFCL at 28-29), and TBC has both admitted that it re-stripes its parking lots on an annual basis and has made specific admissions as to restriping at specific restaurants. This would permit a finding on summary judgment that parking spaces in approximately 78 restaurants were in violation of the ADA.

> \> This Court held in its 2007 partial summary judgment order that the dimensions of queue lines at 77 restaurants were in violation of state and/or federal accessibility regulations (*Moeller*, 2007 WL 2301778 at \*8-12), but left open the

---

[2](...continued)
defense if the defense is equitable in nature."); *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 735 (7th Cir. 2004) ("Even when a plaintiff is entitled to a jury trial on his legal claims, the district court must nonetheless make an independent judgment as to any equitable issue."); *Ill. Tool Works, Inc. v. MOC Prods. Co., Inc.*, 2012 WL 8169898, at \*2 (S.D. Cal. Oct. 15, 2012) ("Because legal and equitable issues are committed to different factfinders, 'it is common and appropriate to hold separate jury and bench trials on the different issues.'").

issue of whether TBC's alternative access lanes provided equivalent facilitation.

In its FFCL, this Court held that as a matter of law, these lanes do not provide equivalent facilitation, thereby permitting a finding on summary judgment that the 77 queue lines violated state and/or federal law (FFCL at 45-51, 52).

> This Court held in its 2007 partial summary judgment order, and in its FFCL, that entrance doors at primary entrances in restaurants built between 1981 and 1994 must comply with door force requirements (*Moeller*, 2007 WL 2301778 at *13-20, FFCL at 29-30, 52). This would permit a finding on summary judgment that approximately 42 entrance doors that TBC has admitted are primary entrances were in violation of state law.

As a result, through this litigation, TBC will have found to have committed approximately 600 violations of access requirements spread among virtually all of the restaurants covered by this case. This record vastly exceeds the record in every case of which Plaintiffs are aware that the Ninth Circuit has affirmed entry of a systemwide injunction, many of which are described above.

In the alternative, if the Court decides not to permit Plaintiffs to file for summary judgment, it can hold another bench trial to address these issues.

We look forward to appearing before you on November 13th.

**DEFENDANT'S STATEMENT**

1. The Plaintiffs' statement is made under the assumption, thirteen years after originally filing this action, that their Motion to Amend has been granted. As of the writing of this statement, it has not. Accordingly, Taco Bell's statement pertains to the case as it exists now. Should the Court ultimately decide to allow Plaintiffs to amend their complaint, the case would be fundamentally altered and the case management plan would need to be much more expansive, as discussed further below.[3]

---

[3] Additionally, Plaintiffs have attempted in this case management statement to put forth lengthy legal arguments before the Court (regarding the proposed amended complaint, not the current operative one), in violation of the Standing Order for All Judges Of the Northern
(continued...)

Case No. C 02 05849 PJH
Joint Case Management Statement

Page 11

2. With regard to the current operative complaint:

   a. The court has previously held that it cannot order any injunctive relief without first conducting further proceedings to determine what, if any, relief is appropriate or available. Taco Bell agrees.

   b. TBC believes that the question of whether an injunction should issue in this case may be resolved by dispositive motion. Taco Bell no longer owns any of the stores visited by the named plaintiffs or the stores listed in the Complaint. Taco Bell asserts - and Plaintiffs concede[4] - that the remaining 41 restaurants Taco Bell owns and operates in California are fully compliant with state and federal ADA requirements. At the least, there is absolutely no evidence before this Court that any restaurant currently owned and operated by Taco Bell is currently non-compliant in any way. Therefore, Taco Bell submits and is prepared to argue that, in accordance with the applicable law, no injunctive relief can issue. Accordingly, Taco Bell asks that the Court set a dispositive motion schedule allowing Taco Bell to bring such a motion.[5]

   c. If the Court were to decline to allow the dispositive motion or ruled against Taco Bell on the motion, then the next proceeding must be a bench trial of Plaintiffs' injunctive relief claims. Taco Bell is entitled, as a matter of fundamental due process, to a trial of the issue of whether an injunction should issue. Taco Bell envisions such a trial, if necessary, to follow the norms of a trial for a permanent injunction - the plaintiffs bear the burden of proof and Taco Bell would have an opportunity to put on a defense.

---

[3](...continued) District of California, paragraph 3 (legal issues should be a brief statement "without extended legal argument"). Taco Bell objects to this inappropriate inclusion of such lengthy and irrelevant legal argument and asks the Court to disregard it on that basis and on the ground that it is irrelevant to the current complaint before the Court.

[4] See supra, at p. 3 ("Plaintiffs do not seek an injunction requiring Taco Bell to bring any elements into compliance as that task was largely accomplished . . . .") (emphasis added).

[5] Plaintiffs appear to suggest that they may file a dispositive motion. While that discussion concerns the proposed amended complaint, and not the current operative complaint, Taco Bell would not oppose allowing the Plaintiffs to file a dispositive motion as to the current operative complaint if they believe that such a motion could be filed.

        d.      The Court has indicated that, in its view, trying the four individual state law damages cases before moving on to proceedings regarding the injunctive relief claim would help it develop the evidentiary record as it relates to the injunctive relief claim. TBC has difficulty seeing how the individual trials would aid the Court in considering the injunctive relief claim because the individual state law damages cases pertain only to historic alleged barriers (that undisputedly no longer exist) in restaurants that TBC no longer owns or operates.[6] Such evidence would have no bearing on prospective injunctive relief concerning current conditions at unrelated restaurant locations.

       3.      With regard to the four individual state law damages cases, Taco Bell does not agree that they can be consolidated into one trial. The claims of the four individual plaintiffs are not the same. As detailed in Taco Bell's opposition to Plaintiffs motion to amend the complaint, the individual plaintiffs assert different alleged barriers, at different locations, encountered at different times. (Please see the chart, infra, for a visual summary of each individual plaintiff's claims.) These four individual claims simply do not have a common nucleus of operative fact warranting a single trial. Moreover, the prejudicial effect to Taco Bell would greatly outweigh any potential judicial economy. Additionally, Plaintiffs' analysis is fundamentally flawed. They incorrectly assert that the jury will decide whether or not a particular barrier was illegal. In actuality, the Court must make those determinations, which are questions of law, not fact. The jury must resolve questions of fact, which here are highly individualized among the four plaintiffs (*e.g.*, whether the individual encountered the barrier, whether he was hindered, and to what extent). The resolution of such fact issues for one individual plaintiff would be irrelevant to such fact issues for the other individual plaintiffs.

---

[6] The current operative complaint alleges visits to six separate Taco Bell restaurants (Restaurant nos. 3948, 4518, 4951, 4558, 4799, 4951, and 18112

**INDIVIDUAL PLAINTIFF CLAIMS:**

| | Queue Lines | Parking Access | Drink Dispenser Placement | Condiment Placement | Accessible Seating | Location |
|---|---|---|---|---|---|---|
| Moeller | x | | X | x | | 3948 |
| Corbett | x | x | | | | 4518 |
| Yates | x | | | | | 4951 |
| Mueggue | x | x | | | x | 3948<br>4558<br>4799<br>4951<br>18112 |

4.    If the court were able to resolve the injunctive claims, either by motion or by a bench trial, thus leaving only state law damages claims, TBC believes that this Court could resolve those individual damage claims efficiently by trial. Given that each plaintiff currently alleges only 1 to 3 barriers and 3 of the 4 plaintiffs' only allege encountering those barriers at a single restaurant, Taco Bell submits that short trials (perhaps several days, but certainly less than a week) would be able to resolve those remaining claims very efficiently.

5.    As noted, Plaintiffs' statement concerns the proposed amended complaint, not the current operative one. Taco Bell disagrees with many, if not all, of the assertions, assumptions and conclusions contained in the Plaintiffs' statement, but does not respond in detail because those assertions, assumptions and conclusions all pertain to the proposed amended complaint, which is NOT the operative complaint as of the date of this statement. However, Taco Bell does note in particular the Plaintiffs' suggestions that an injunction should be entered without further litigation, and that the individual state law damages trials should be consolidated into one proceeding. Taco Bell strongly disagrees with both suggestions.

    a.    If the Court grants the Plaintiffs leave to amend their complaint and include a claim based on Taco Bell's policies (a claim currently not in the case), then the Court ultimately would need to hold a trial to hear evidence regarding Taco Bell's CURRENT policies and procedures. As the Court may expect, in the more than three years since the Court last heard evidence concerning Taco Bell's policies, things have changed. Taco Bell has a due

process right to be heard and allowed to present to the Court its current policies, as any injunction that might issue would necessarily have to be based on Taco Bell's current policies, and not on former policies that are out of date and no longer used. To give but one example, the Court noted in its FFCL that Maintco, a third party vendor that inspects every restaurant in California for ADA compliance, conducted inspections twice a year. Now, however, and for the last several years, Maintco conducts ADA compliance inspections of each restaurant in California every 4 weeks. Many other changes have occurred, as well.

6. If the Court elects to grant Plaintiffs' motion to amend the complaint, a very different case management plan would be required. Such a plan would have to consider scheduling for responsive pleadings to the amended complaint, a written and oral discovery plan, a schedule for dispositive motions, and planning for the individual damages and class injunctive relief trials. If the Court ultimately allows the Plaintiffs to amend their complaint, which Taco Bell opposes, Taco Bell would request an opportunity to be heard again at that time as to the specific management of that new case.

Respectfully submitted,

CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER

By:    /s/ Timothy P. Fox
Timothy P. Fox

Attorneys for Plaintiffs


SHEPPARD MULLIN RICHTER & HAMPTON, LLP


By /s/   Gregory F. Hurley
Gregory F. Hurley

Attorneys for Defendant
TACO BELL CORP.

Dated: November 7, 2013