# Exhibit A

## SETTLEMENT AGREEMENT

1 **Introduction.**

    1.1    This Settlement Agreement ("Agreement") is entered into by and between Taco Bell Corp. ("TBC") and Francie E. Moeller, Edward Muegge, Katherine Corbett, and Craig Thomas Yates (collectively "Named Plaintiffs"), individually, and on behalf of themselves and a class of persons similarly situated (hereinafter referred to as the "Class" and defined below), for purposes of the remainder of the Agreement. TBC and the Named Plaintiffs (individually and on behalf of the Class), shall individually be referred to as a "Party" and jointly as the "Parties."

    1.2    Each Named Plaintiff uses a wheelchair or scooter for mobility and each is a person with a disability, as that term is used in the Americans with Disabilities Act, who patronized restaurants in California owned and operated by TBC (such California restaurants owned and operated by Taco Bell, collectively "TBC Restaurants").

    1.3    The Named Plaintiffs have brought suit in the United States District Court for the Northern District of California (the "Court"), Civil Action No. 02-cv-5849-PJH (the "Lawsuit"), in which they allege that TBC violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, the California Disabled Persons Act, Cal. Civ. Code § 54 *et seq.* (the "CDPA"), and/or California's Unruh Civil Rights Act, id. § 51 *et seq.* ("Unruh") at TBC Restaurants. The ADA, CDPA, and Unruh will collectively be referred to as the "Accessibility Statutes."

    1.4    On February 23, 2004, the Court certified a class of individuals who used wheelchairs or scooters who had allegedly encountered barriers at TBC Restaurants since December 17, 2001. *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 613-14 (N.D. Cal. 2004). On July 26, 2012, the Court decertified the damages portion of this class action, but maintained the certification of the injunctive class. *Moeller v. Taco Bell Corp.*, 2012 WL 3070863, at *4 (N.D. Cal. July 26, 2012).

    1.5    TBC undertook a remediation program designed to bring the approximately 200 TBC Restaurants into compliance with the Accessibility Statutes. TBC thereafter divested itself of the majority of those restaurants, and now owns and operates 41 restaurants in California. The parties acknowledge that Taco Bell undertook to repair or otherwise remedy all structural and fixed barriers in its California Restaurants alleged in the complaint, and that those elements at TBC Restaurants are now in substantial compliance with the Accessibility Statutes. Both parties further believe that TBC has developed policies and procedures that will constitute an effective system to identify and remedy any movable barriers or other maintenance-related barriers, such as door pull pressures. Finally, TBC acknowledges the important role that the Class and Class Counsel have played in promoting and ensuring the accessibility of TBC Restaurants.

    1.6    The Parties now wish to completely resolve and settle all claims, disputes and

controversies relating to the allegations of Named Plaintiffs and the Class, and to resolve their differences and disputes by settling the Lawsuit.

1.7 This Agreement is binding on the Parties and their respective subsidiaries, successors, heirs, and assigns, provided, however, that the Parties acknowledge and agree that this Agreement does not apply to, and is not binding upon, any TBC franchisee or licensee.

1.8 The term of this Agreement is two (2) years from the date of the Final Approval of this Agreement.

2 **No Admission of Liability.** By agreeing to and voluntarily entering into this Agreement, there is no admission or concession by TBC, direct or indirect, express or implied, that TBC Restaurants were or are in any way inaccessible or that TBC has violated or is violating the Americans with Disabilities Act, or any other federal, state, or local law, building code, regulation, order, or rule.

3 **Conditions Precedent.** This Agreement shall be conditioned upon and shall be effective only upon, the occurrence of all of the following events:

3.1 Class Counsel and TBC move jointly by stipulation for an Order Granting Preliminary Approval of this Agreement and Issuance of Notice in accordance with this Agreement and such motion is granted by the Court.

3.2 Notice is provided to the Class in accordance with this Agreement.

3.3 A Fairness Hearing is held in accordance with this Agreement.

3.4 The Court grants Final Approval of this Agreement after a Fairness Hearing has been conducted in accordance with applicable legal requirements, the time to file any appeal of the Court's ruling has expired, and no such appeal has been filed. This Agreement, once finally approved by the Court, no longer subject to appeal or appealed, shall fully and finally resolve all issues raised in this proceeding.

4 **Maintaining Access At TBC Restaurants.** For two (2) years following the date of Final Approval of this Agreement, TBC will ensure that TBC Restaurants remain in compliance with the Accessibility Statutes as follows in this Section 4:

4.1 TBC shall instruct the managers at each TBC Restaurant to inspect the restaurant at least once each day for accessibility, so that:

4.1.1 All self-serve items are within required reach ranges; and

4.1.2 There are no trash cans, advertising signs, or other moveable barriers obstructing paths of travel within the restaurant and to and within the restrooms.

4.1.3 TBC shall instruct these managers to adjust reach ranges and relocate barriers as necessary to ensure access.

        4.1.4  TBC shall implement such instructions by no later than 90 days following the Final Approval of this Agreement.

4.2    TBC shall require that a "Compliance Monitor" inspect once every six months each TBC Restaurant currently owned and operated by TBC and each TBC Restaurant subsequently acquired by TBC for compliance with the Accessibility Statutes and shall take or cause to be taken prompt corrective action with respect to any deviation from the Accessibility Statutes. The Parties acknowledge that TBC currently uses a Compliance Monitor to conduct inspections of TBC Restaurants owned and operated by TBC.

4.3    TBC shall require that a "Construction Monitor" inspect any new restaurant construction in California or any major alteration or major remodel of a TBC Restaurant in California, including any subsequently acquired TBC Restaurant, for compliance with the Accessibility Statutes and that TBC shall take, or cause to be taken, prompt corrective action with respect to any deviation from the Accessibility Statutes. The Parties acknowledge that TBC currently uses a Construction Monitor to conduct such inspections. Newly constructed TBC Restaurants and any subsequently acquired TBC Restaurant that has closed for a major alteration or major remodel must be in substantially full compliance with the Accessibility Statutes when they open for business; provided, however, that a Construction Monitor shall inspect any such restaurant within thirty (30) days of when it opens for business for compliance with the Accessibility Statutes and that TBC shall take, or cause to be taken, prompt corrective action with respect to any deviation from the Accessibility Statutes.

4.4    Should TBC acquire additional restaurants in California that Taco Bell intends shall continue to remain open to the public after such acquisition, where such subsequently acquired additional restaurants are not in compliance with the Accessibility Statutes at the time of acquisition, TBC shall take, or cause to be taken corrective action with respect to any deviation from the Accessibility Statutes within 120 days after acquisition.

4.5    On an annual basis, beginning with the date of the final approval of this Agreement and for two (2) years thereafter, TBC shall train its maintenance technicians, construction managers, facilities leaders, engineers, and architects regarding the requirements of the Accessibility Statutes and the correction of any condition that would present accessibility barriers to Class members. The Parties acknowledge that TBC currently provides such training. Additionally, within 90 days of the Final Approval of this Agreement, TBC shall develop and include in its training materials for restaurant employees a training segment concerning TBC's ADA compliance policy and hospitality for disabled customers.

4.6    TBC shall maintain records of the monitoring it conducts pursuant to paragraphs 4.2 and 4.3 for the shorter period of two (2) years after each inspection or the date TBC no longer owns the store for which the records are maintained.

5      **Subsequently Divested Restaurants.**

     5.1   Should TBC divest itself from ownership and operation of a TBC Restaurant, such restaurant shall cease to be subject to the terms of this Agreement as of the date of the closure of the sale or other transfer of such restaurant. Nothing herein will prohibit TB from selling, franchising, transferring, closing or otherwise terminating operations at any location.

6      **Plaintiffs' Damages and Attorneys' Fees and Costs.** Plaintiffs and their counsel have agreed to settle Plaintiffs' claims for damages and for attorneys' fees, litigation expenses, including experts' fees and costs under federal and state law, that the Named Plaintiffs, the Class or Class counsel have incurred in connection with this matter and all other sums recoverable in this matter, in the total amount of $5,375,000. Plaintiffs and their counsel have decided amongst themselves that this lump sum shall be allocated as set forth in Section 6.1. TBC will support Class Counsel's request for attorneys' fees and costs up to the amount set forth in Section 6.1.5.

     6.1   Within fifteen (15) business days after Final Approval of this Agreement, the expiration of any and all deadlines for the filing of any appeal of the court's Final Approval of this Agreement, and no such appeal being filed, TBC will deliver checks or wire transfer to plaintiffs' counsel in the following amounts to the following payees:

|  |  |  |
|---|---|---|
| 6.1.1 | Francie Moeller: | $50,000 |
| 6.1.2 | Edward Muegge: | $50,000 |
| 6.1.3 | Katherine J. Corbett Special Needs Trust: | $50,000 |
| 6.1.4 | Craig Thomas Yates: | $50,000 |
| 6.1.5 | Fox & Robertson, P.C. | $5,175,000 |

     6.2   Such payments will be in full and complete satisfaction of any and all claims for attorneys' fees, litigation expenses, including expert fees, costs, and all other sums recoverable, except damages, under federal or state law that the Class or Class Counsel have incurred or otherwise could have incurred or recovered in this Lawsuit up to and including the date of Final Approval of this Agreement and will be in full and complete satisfaction of any and all claims for damages, attorneys' fees, litigation expenses, including expert fees, costs and all other sums recoverable under federal or state law that the Named Plaintiffs have incurred or otherwise could have incurred or recovered in connection with this Lawsuit up to and including the date of Final Approval of this Agreement.

     6.3   Class Counsel agree to defend and indemnify the TBC Parties, as defined below, from any and all claims for attorneys' fees, litigation expense, including expert fees, and costs and from any liens for attorneys' fees, litigation expense, including expert fees and costs incurred, related to, concerning, or arising from this Lawsuit and/or Agreement

incurred on behalf of the Class or the Named Plaintiffs and damages claims of the Named Plaintiffs prior to the date of Final Approval of this Agreement, provided, however, that such defense and indemnity obligations shall not apply to responding to any objection to this Agreement, any enforcement proceeding concerning this Agreement, any damages claims not settled by this Agreement, any collateral legal challenge to this Agreement, including its notice provisions, or any subsequent allegation of non-compliance with the Accessibility Statutes in state or federal court.

7 **Preliminary Approval, Objections and Fairness Hearing**.

  7.1 Promptly after execution of this Agreement, the Parties shall jointly request that the Court schedule a joint conference call to discuss the terms of the settlement agreement and seek the court's initial reactions to the proposed settlement. Provided that the court does not indicate that it would disapprove the terms of the settlement, the parties shall then request a preliminary approval hearing within twenty-one (21) court days of the joint call to the Court, or as soon thereafter as the Court may set the hearing and that the Court preliminarily approve the Agreement and approve the proposed form of Notice and plan for providing notice submitted by the Parties.

  7.2 Class Counsel and TBC shall ask the Court to schedule a fairness and final approval hearing for 95 days after the date set by the Court for issuance of the Notice (the "Notice Deadline"), or as soon thereafter as the Court may set the hearing.

  7.3 Class Counsel and TBC shall ask the Court to order the following procedures for objections: Any Class Member may object to the proposed Agreement by filing, within sixty (60) days after the Notice Deadline set by the Court, written objections with the Clerk of the Court. Only such objecting Class Members shall have the right, and only if they expressly seek it in their objection, to present objections orally at the Fairness Hearing. Responses by TBC and Class Counsel to any timely-filed objections shall be made no less than seven (7) days before the Fairness Hearing.

8 **Notice**:

  8.1 Notice of this Agreement (the "Notice") will be provided to the Class. Provided that the Notice plan described below is approved by the Court, such notice shall be at Class Counsel's expense.

  8.2 The proposed Notice and the plan for providing notice must satisfy the requirements of Federal Rule of Civil Procedure 23 and applicable legal precedent, and must be approved by the Court. In their motion seeking preliminary approval of the Agreement, the Parties will propose that Notice be provided as described in the following paragraphs.

  8.3 The Notice shall be in a form agreed to by the Parties for submission to the Court,

which agreement shall be reached in advance of submitting the proposed settlement to the Court for preliminary approval, or such other form as ordered by the Court, and shall inform Class Members of at least the following; (1) a general description of the terms of this Agreement; (2) their right to object to the Agreement.

8.4   Within ten (10) calendar days after Preliminary Approval, or on such other date as set by the Court, Notice shall be provided as follows and/or in such other manner as ordered by the Court:

8.4.1   The Notice shall be sent by email, or, if no email address is known and a street address is available, then by First Class Mail, to those individuals who have contacted Class Counsel to express interest in this lawsuit, at the last known address provided to Class Counsel.

8.4.2   The Notice shall be posted on the website (the "Website") established by Class Counsel for this case (www.tacobellclassaction.com).

8.4.3   The Notice and a link to the Notice on the Website shall be sent by email to disability rights organizations in California with a request that it be printed and posted and that the organizations put a link to the notice on their websites.

## 9   Judgment, Final Approval and Dismissal.

9.1   At the time of the Fairness Hearing, TBC and Class Counsel shall jointly request that the Court grant Final Approval of this Agreement. Among other things, the Final Approval shall attach this Agreement as an exhibit to its final approval.

9.2   This Lawsuit shall be dismissed with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure, no later than thirty (30) days following Final Approval, provided that no Class Member appeals the final approval of the settlement.

## 10   Terms Not Confidential; Communication with the Press.

10.1   The terms of this Agreement shall not be confidential, but the negotiations concerning this Agreement shall remain confidential, provided that either Party may respond to requests from the Court or Class Members concerning such negotiations.

10.2   The parties have exchanged drafts of press releases ("Press Releases"), which are attached hereto as Exhibits 1 and 2, respectively, which the parties each agree will constitute their respective initial statements to the press. With respect to the preparation of such press release, the parties acknowledge that this Agreement was negotiated at arm's length in good faith and that both parties, as part of the settlement process, have worked diligently and in good faith to ensure adequate accessibility for people with disabilities at Taco Bell Restaurants.

10.3 Class Counsel, any Named Plaintiff, and TBC each agree that any public statement other than the above-referenced Press Releases will be consistent with the terms of this Agreement and the Press Releases.

11 **Releases**:

11.1 Release of Claims for Injunctive Relief

11.1.1 Effective on the date of Final Approval, Named Plaintiffs and all Class Members and each of their executors, successors, heirs, assigns, administrators, agents, lawyers, and representatives (collectively, the "Injunctive Releasing Parties"), in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, unconditionally and forever do fully and finally release, acquit, and discharge TBC and its present and former parents and subsidiaries and each of their respective present, former or future officers, directors, employees, shareholders, administrators, executors, affiliates, successors and assigns (collectively, the "TBC Parties") from the Released Injunctive Claims as defined below.

11.1.2 Notwithstanding the provisions of Section 1542 of the California Civil Code, the "Released Injunctive Claims" are any and all claims, rights, demands, charges, complaints, actions, suits and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory or other non-monetary relief, however described, based on conduct preceding Final Approval of this Agreement, that were brought, could have been brought or could be brought now or in the future that relate in any way to the accessibility of TBC Restaurants to persons who use wheelchairs or scooters under:

11.1.2.1 Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.*, and all rules and regulations promulgated thereunder; and

11.1.2.2 Cal. Civil Code Sections 52, *et seq.*, and the Disabled Persons Act, and Unruh Act contained therein, and Cal. Code Regs., Title 24 and all rules and regulations promulgated thereunder, and any other provision of California law to the extent it grants a right of action for alleged violations of the foregoing.

11.1.2.3 Section 1542 of the California Civil Code provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

11.2   Release of Claims for Damages

   11.2.1 Effective on the date of Final Approval, Named Plaintiffs (on behalf of themselves only and not the Class) and each of their executors, successors, heirs, assigns, administrators, agents, lawyers, and representatives (collectively, the "Damages Releasing Parties"), in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, unconditionally and forever do fully and finally release, acquit, and discharge the TBC Parties from the Released Damages Claims as defined below.

   11.2.2 The "Released Damages Claims" are any and all claims, rights, demands, charges, complaints, actions, suits, causes of action, and liabilities of any kind, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for damages based on conduct preceding Final Approval of this Agreement that were brought, could have been brought or could be brought now or in the future that relate in any way to the accessibility of Covered Restaurants to persons who use wheelchairs or scooters.

   11.2.3 RELEASE OF UNKNOWN CLAIMS As to the matters released herein, each of the Parties to this Agreement expressly waives, to the full extent permitted by law, all rights pursuant to section 1542 of the California Civil Code which provides as follows:

   A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

   TBC and the Named Plaintiffs each acknowledge to the other that they are aware that they or their attorneys may discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to settle and release fully, finally and forever, any and all disputes and differences, known and unknown, suspected and unsuspected, which now exist, may exist up to the date of the Final Approval of this Agreement or have existed, between them relating to the subject matter of this Agreement.

11.3   Named Plaintiffs each warrants and represents that he or she has not assigned or transferred, or purported to assign or transfer, voluntarily, involuntarily, or by operation of law, any matter released or assigned pursuant to this Agreement, and agrees to defend, indemnify, protect, and hold harmless each other against any claim, demand, damage, debt, liability, account, reckoning, obligation, cost,

expense, lien, action, or cause of action (including any right to payment of attorneys' fees and costs, whether or not litigation be commenced) based upon, in connection with, or arising out of any such assignment or transfer.

12     Dispute Resolution

       12.1    For two (2) years following the Final Approval of this Agreement, as a condition precedent for the Named Plaintiffs, Class Counsel or any Class Member to file a claim in federal or state court to enforce any provision of this Agreement or to obtain injunctive relief alleging the existence of a barrier to access (as defined in Title III of the ADA, the CDPA, and/or Unruh) for individuals who use wheelchairs or scooters at a TBC-owned restaurant in California, the Named Plaintiffs, Class Counsel or the Class Member must first submit a Notice of Barrier to Class Counsel and to TBC to the names and addresses and in the manner set forth in Section 14 of this Agreement. A Notice of Enforcement alleging the breach of any provision of this Agreement shall include (1) the name, address and telephone number of the Named Plaintiff, Class Counsel or Class Member submitting the Notice of Enforcement; and (2) the provision of this Agreement specifically alleged to have been violated. Each Notice of Enforcement shall include one, and only one, alleged violation of this Agreement. Multiple Notices of Enforcement may be submitted at the same time. A Notice of Barrier shall include (1) the name, address and telephone number of the Named Plaintiff, Class Counsel or Class Member submitting the Notice of Barrier; (2) the address of the store location where the alleged barrier was encountered; (3) identification with specificity of the nature of the alleged barrier encountered; and (4) the date and time when the alleged barrier was encountered. Each Notice of Barrier shall include one, and only one, alleged barrier. Multiple Notices of Barrier may be submitted at the same time. A Notice of Enforcement or Barrier shall be deemed received five days following delivery by the means set forth in Section 14 of this Agreement.

       12.2    Within ten days following receipt of a Notice of Enforcement or Barrier by TBC, TBC shall respond to the individual who submitted the Notice of Enforcement or Barrier to the address provided in the Notice (with a copy to Class Counsel) providing the following information: (1) a statement of whether TBC confirms or rejects the Notice of Enforcement or Barrier; and (2) if TBC confirms the Notice of Enforcement or Barrier a statement that the alleged violation or barrier has been remedied or removed, respectively, or a specific date within ten (10) days by which the alleged violation or barrier, respectively, will be remedied or removed. TBC shall have no further liability for any form of Injunctive Claims as described and defined in Section 11.1 of this Agreement arising out of or relating to the Notice of Enforcement or Barrier unless the Named Plaintiff, Class Counsel, or Class Member who submitted the Notice of Enforcement or Barrier disputes whether TBC remedied the alleged violation or removed the alleged barrier to access. In the event of a dispute described in this Section 12.2, any party to the dispute (including, where applicable, the Named Plaintiff, Class Counsel, a Class Member, or TBC) shall have the right to submit the dispute to federal or state court for determination.

12.3 The provisions of this Section 12, including its subdivisions, shall remain in effect and apply to all alleged breaches of this Agreement and barriers to access described in Section 11.1, above, that are alleged to exist at any time during the period beginning from the date of the Final Approval of this Agreement and ending two (2) years following the date of the Final Approval of this Agreement.

12.4 If any Class Member or other individual should assert or file a claim that TBC believes is covered by Paragraph 12.1 above, TBC shall provide written notice to such individual including a copy of this Agreement, and request that such individual pursue the claim through the procedures established by this Paragraph 12. TBC shall not take any legal action against such Class Member or other individual unless he or she files a complaint in state or federal court and refuses, after the notice described in the Paragraph, to withdraw such complaint.

12.5 Nothing in this Agreement obligates Class Counsel to represent any member of the Class in any dispute resolution or in any enforcement proceeding.

13 **Entire Agreement.** This Agreement contains all the agreements, conditions, promises and covenants among TBC, Named Plaintiffs, Class Counsel, and the Class, regarding matters set forth in it and supersedes all prior or contemporaneous agreements, drafts, representations or understandings, either written or oral, with respect to the subject matter of the present Agreement.

14 **Communications to TBC And Class Counsel.** All notices or communications required by this Agreement shall be in writing by email and U.S. Mail or overnight delivery service addressed as follows:

14.1 To Named Plaintiffs, Class Counsel or the Settlement Class:

Timothy P. Fox
Civil Rights Education and Enforcement Center
104 Broadway, Suite 400
Denver, CO 80203
303.757.7901
tfox@creeclaw.org

14.2 To TBC:

John A. Makarewich
Taco Bell Corp.
1 Glen Bell Way
Irvine, CA 92618
(949)863-4500
john.makarewich@yum.com

15 **Modification.** Prior to Final Approval, this Agreement can be amended only by written

agreement of the Parties hereto.

16  **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

17  **Execution by Facsimile and in Counterparts.** This Agreement may be executed by the Parties hereto by facsimile and in separate counterparts, and all such counterparts taken together shall be deemed to constitute one and the same agreement.

18  **Receipt of Advice of Counsel.** The Parties acknowledge and warrant to each other that they have fully read this Agreement, have received independent legal advice regarding the advisability of entering into this Agreement, and fully understand its effect.

19  **Power and Authority.** The Parties represent that they have the power and authority to execute and deliver this Agreement and to perform the obligations hereunder, and that each person executing this Agreement on each party's behalf has been authorized to sign on behalf of the respective party and to bind each to the terms of this Agreement.

20  **Duty to Support and Defend Agreement.** Named Plaintiffs, Class Counsel and TBC each agree to abide by all of the terms of this Agreement in good faith and to support it fully, and shall use their best efforts to defend this Agreement from any legal challenge, whether by appeal or collateral attack.

21  **Governing Law and Jurisdiction.** This Agreement shall be subject to, governed by, and enforced and construed pursuant to the laws of the State of California.

22  **Counterparts.** This Agreement may be executed in any number of counterparts and/or by facsimile, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

AGREED

Francie Moeller     Edward Muegge     Katherine Corbett     Craig T. Yates

_____    _____    _____       _____

TACO BELL CORP.                              Approved as to Form

_/s/_____                          _____

Its: Chief Financial Officer                 Class Counsel

agreement of the Parties hereto.

16   **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

17   **Execution by Facsimile and in Counterparts.** This Agreement may be executed by the Parties hereto by facsimile and in separate counterparts, and all such counterparts taken together shall be deemed to constitute one and the same agreement.

18   **Receipt of Advice of Counsel.** The Parties acknowledge and warrant to each other that they have fully read this Agreement, have received independent legal advice regarding the advisability of entering into this Agreement, and fully understand its effect.

19   **Power and Authority.** The Parties represent that they have the power and authority to execute and deliver this Agreement and to perform the obligations hereunder, and that each person executing this Agreement on each party's behalf has been authorized to sign on behalf of the respective party and to bind each to the terms of this Agreement.

20   **Duty to Support and Defend Agreement.** Named Plaintiffs, Class Counsel and TBC each agree to abide by all of the terms of this Agreement in good faith and to support it fully, and shall use their best efforts to defend this Agreement from any legal challenge, whether by appeal or collateral attack.

21   **Governing Law and Jurisdiction.** This Agreement shall be subject to, governed by, and enforced and construed pursuant to the laws of the State of California.

22   **Counterparts.** This Agreement may be executed in any number of counterparts and/or by facsimile, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

AGREED

Francie Moeller      Edward Muegge      Katherine Corbett      Craig T. Yates

_____     _____    _____        _____

TACO BELL CORP.                         Approved as to Form

_____                         _____
Its:                                    Class Counsel

agreement of the Parties hereto.

16   **Drafting of this Agreement**. This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

17   **Execution by Facsimile and in Counterparts**. This Agreement may be executed by the Parties hereto by facsimile and in separate counterparts, and all such counterparts taken together shall be deemed to constitute one and the same agreement.

18   **Receipt of Advice of Counsel**. The Parties acknowledge and warrant to each other that they have fully read this Agreement, have received independent legal advice regarding the advisability of entering into this Agreement, and fully understand its effect.

19   **Power and Authority**. The Parties represent that they have the power and authority to execute and deliver this Agreement and to perform the obligations hereunder, and that each person executing this Agreement on each party's behalf has been authorized to sign on behalf of the respective party and to bind each to the terms of this Agreement.

20   **Duty to Support and Defend Agreement**. Named Plaintiffs, Class Counsel and TBC each agree to abide by all of the terms of this Agreement in good faith and to support it fully, and shall use their best efforts to defend this Agreement from any legal challenge, whether by appeal or collateral attack.

21   **Governing Law and Jurisdiction**. This Agreement shall be subject to, governed by, and enforced and construed pursuant to the laws of the State of California.

22   **Counterparts**. This Agreement may be executed in any number of counterparts and/or by facsimile, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

AGREED

Francie Moeller     Edward Muegge     Katherine Corbett     Craig T. Yates

_____  /s/ Edward Muegge  _____     _____

TACO BELL CORP.                              Approved as to Form

_____                            _____
Its:                                         Class Counsel

agreement of the Parties hereto.

16  **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

17  **Execution by Facsimile and in Counterparts.** This Agreement may be executed by the Parties hereto by facsimile and in separate counterparts, and all such counterparts taken together shall be deemed to constitute one and the same agreement.

18  **Receipt of Advice of Counsel.** The Parties acknowledge and warrant to each other that they have fully read this Agreement, have received independent legal advice regarding the advisability of entering into this Agreement, and fully understand its effect.

19  **Power and Authority.** The Parties represent that they have the power and authority to execute and deliver this Agreement and to perform the obligations hereunder, and that each person executing this Agreement on each party's behalf has been authorized to sign on behalf of the respective party and to bind each to the terms of this Agreement.

20  **Duty to Support and Defend Agreement.** Named Plaintiffs, Class Counsel and TBC each agree to abide by all of the terms of this Agreement in good faith and to support it fully, and shall use their best efforts to defend this Agreement from any legal challenge, whether by appeal or collateral attack.

21  **Governing Law and Jurisdiction.** This Agreement shall be subject to, governed by, and enforced and construed pursuant to the laws of the State of California.

22  **Counterparts.** This Agreement may be executed in any number of counterparts and/or by facsimile, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

AGREED

Francie Moeller      Edward Muegge      Katherine Corbett      Craig T. Yates

_____     _____    _____        _____

TACO BELL CORP.                         Approved as to Form

_____                         _____
Its:                                    Class Counsel

agreement of the Parties hereto.

16   **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

17   **Execution by Facsimile and in Counterparts.** This Agreement may be executed by the Parties hereto by facsimile and in separate counterparts, and all such counterparts taken together shall be deemed to constitute one and the same agreement.

18   **Receipt of Advice of Counsel.** The Parties acknowledge and warrant to each other that they have fully read this Agreement, have received independent legal advice regarding the advisability of entering into this Agreement, and fully understand its effect.

19   **Power and Authority.** The Parties represent that they have the power and authority to execute and deliver this Agreement and to perform the obligations hereunder, and that each person executing this Agreement on each party's behalf has been authorized to sign on behalf of the respective party and to bind each to the terms of this Agreement.

20   **Duty to Support and Defend Agreement.** Named Plaintiffs, Class Counsel and TBC each agree to abide by all of the terms of this Agreement in good faith and to support it fully, and shall use their best efforts to defend this Agreement from any legal challenge, whether by appeal or collateral attack.

21   **Governing Law and Jurisdiction.** This Agreement shall be subject to, governed by, and enforced and construed pursuant to the laws of the State of California.

22   **Counterparts.** This Agreement may be executed in any number of counterparts and/or by facsimile, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

AGREED

Francie Moeller        Edward Muegge        Katherine Corbett        Craig T. Yates

_/s/ Francie Moeller_ _____        _____        _____

TACO BELL CORP.                              Approved as to Form

_____                         _____
Its:                                         Class Counsel

agreement of the Parties hereto.

16. **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

17. **Execution by Facsimile and in Counterparts.** This Agreement may be executed by the Parties hereto by facsimile and in separate counterparts, and all such counterparts taken together shall be deemed to constitute one and the same agreement.

18. **Receipt of Advice of Counsel.** The Parties acknowledge and warrant to each other that they have fully read this Agreement, have received independent legal advice regarding the advisability of entering into this Agreement, and fully understand its effect.

19. **Power and Authority.** The Parties represent that they have the power and authority to execute and deliver this Agreement and to perform the obligations hereunder, and that each person executing this Agreement on each party's behalf has been authorized to sign on behalf of the respective party and to bind each to the terms of this Agreement.

20. **Duty to Support and Defend Agreement.** Named Plaintiffs, Class Counsel and TBC each agree to abide by all of the terms of this Agreement in good faith and to support it fully, and shall use their best efforts to defend this Agreement from any legal challenge, whether by appeal or collateral attack.

21. **Governing Law and Jurisdiction.** This Agreement shall be subject to, governed by, and enforced and construed pursuant to the laws of the State of California.

22. **Counterparts.** This Agreement may be executed in any number of counterparts and/or by facsimile, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

AGREED

Francis Moeller          Edward Muegge          Katherine Corbett          Craig T. Yates
                                                _Kat_

_____          _____          _____          _____

TACO BELL CORP.                                  Approved as to Form

Its: _____                                  _____
                                                  Class Counsel

**Exhibit 1**

For Immediate Release: Contact: Tim Fox [Phone Number]

**Taco Bell Settles California Class Action for Customers Using Wheelchairs**

On the eve of a trial scheduled for this Friday in federal court in Oakland, the parties to a disability access class action lawsuit brought against Taco Bell in California have announced a settlement of the long-running case. The action, originally filed in 2002, was brought on behalf of customers who use wheelchairs and scooters; the suit claimed that Taco Bell restaurants did not provide accessible facilities as required by law. The settlement will ensure that Taco Bell restaurants are maintained in compliance with all legal requirements for accessibility.

The lawsuit challenged a variety of access barriers, including queue lines too narrow for wheelchairs, inadequate parking spaces, and doors too heavy to be opened by persons with limited mobility. After the lawsuit was filed, Taco Bell engaged in significant efforts to improve access at its California restaurants. The agreement ensures that access will be maintained by requiring daily surveys by managers, surveys every six months by compliance monitors, and training of Taco Bell managers and employees. It also ensures that restaurants that are subsequently acquired by Taco Bell are accessible.

One of the original four plaintiffs, Katherine Corbett, had encountered many of these barriers when she and her daughter would eat at Taco Bell restaurants near her home in Richmond. Ms. Corbett, who uses a scooter, remarked about the settlement: "I love the food at Taco Bell and I am delighted that I will be able to enjoy it without any barriers." Tim Fox, Executive Director of the Civil Rights Education and Enforcement Center and one of the attorneys for class, expressed his appreciation for Taco Bell's cooperation in resolving the matter. " We commend Taco Bell for the work it has performed to improve the accessibility of its restaurants to people who use wheelchairs and scooters, and to make sure that that access is maintained in the future."

In addition to changes in Taco Bell's practices, the settlement provides compensation for the four plaintiffs as well as attorneys' fees for the lawyers representing the class. The settlement must still be approved by Judge Phyllis J. Hamilton.

**Exhibit 2**

We are very pleased to announce that the parties were able to come together and resolve the <u>Moeller v. Taco Bell</u> lawsuit. We worked hard with plaintiffs and their counsel to address their access concerns and ensure that all our California restaurants comply with all accessibility statutes. Taco Bell put in place an industry-leading compliance program to ensure our restaurants remain accessible, and our access compliance team is led by our own, internal Certified Access Specialist (CASp), who is approved by the California State Architect. This program includes contracts with third party vendors who inspect our restaurants regularly and ensure that new restaurant construction meets all accessibility requirements. It also includes extensive annual training for all of our maintenance, construction managers, and architects concerning accessibility requirements. We value all customers and want to ensure our restaurants are accessible to all.