# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIE E. MOELLER, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>TACO BELL CORP.,<br><br>    Defendant. | Case No.    C 02 5849 PJH NC<br><br><u>CLASS ACTION</u><br><br>**[PROPOSED]** ORDER GRANTING<br>**PLAINTIFFS' UNOPPOSED MOTION FOR**<br>**AN AWARD OF ATTORNEYS' FEES AND**<br>**COSTS**<br><br>Date:   September 24, 2014<br>Time:   9 a.m.<br>Judge: Hon. Phyllis J. Hamilton |

Having reviewed the Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees and Costs and the documents submitted in support thereof, the Court now FINDS, CONCLUDES, and ORDERS as follows:

1.  Plaintiffs filed this class action case on December 17, 2002, alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and the Unruh Civil Rights Act. ("Unruh"), Cal. Civ. Code § 51 *et seq*. ECF 1. Plaintiffs amended their complaint to assert violations of the California Disabled Persons Act ("CDPA"), Cal. Civ. Code § 54 *et seq.*, in August, 2003. ECF 36. Plaintiffs alleged that Taco Bell corporate restaurants in California contained barriers to customers who use wheelchairs or scooters in violation of those statutes.

2. On February 23, 2004, the Court certified the following class.

> All individuals with disabilities who use wheelchairs or electric scooters for mobility who, at any time on or after December 17, 2001, were denied, or are currently being denied, on the basis of disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of California Taco Bell corporate restaurants.

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 613-14 (N.D. Cal. 2004). On July 26, 2012, this Court decertified the damages portion of the class originally certified in 2004, but maintained certification of a Rule 23(b)(2) injunctive class. *Moeller v. Taco Bell Corp.*, 2012 WL 3070863 (N.D. Cal. July 26, 2012).

3. This case has been intensely litigated and has resulted in significant access improvements at over 200 Taco Bell restaurants, a settlement putting in place a system to ensure that those improvements are maintained, and a number of significant legal holdings that strengthen the rights of people with disabilities to accessible places of public accommodation.

4. The parties reached a settlement in the matter on April 25, 2014. The Settlement Agreement, ECF 797-1, acknowledges the extensive steps Defendant Taco Bell Corp. ("TBC") took to remedy barriers in its corporate restaurants in response to the litigation and the important role the Class and Class Counsel have played in promoting and ensuring the accessibility of Taco Bell restaurants, *id.* ¶ 1.5, and sets forth requirements designed to ensure that such access is maintained, *id.* ¶ 4. In the Settlement Agreement, TBC agrees to pay $5,375,000 in damages and attorneys' fees and costs, and agreed to support Class Counsel's request for attorneys' fees and costs up to the amount of $5,175,000. *Id.* ¶ 6.

5. On June 4, 2014, this Court granted preliminary approval to the parties' settlement and ordered that Class Counsel file an application for attorneys' fees on or before August 1, 2014. ECF 798 at 2.

6. Plaintiffs have now filed their Unopposed Motion for An Award of Attorneys' Fees and Costs, supported by the declarations of Class Counsel Amy Robertson, Mari Mayeda, Antonio Lawson, and Jocelyn Larkin and expert Linda Dardarian. Ms. Robertson's declaration attached summary spreadsheets setting forth the number of hours billed, the rates of attorneys

who billed more than two percent of the time on the case, and the issues to which the time was devoted.

7. These declarations establish the experience, credentials, and rates of Class Counsel, which this Court approves. Indeed, Class Counsel are using rates approved by another Court in this district two years ago. *Vallabhapurapu v. Burger King Corp.*, 3:11-cv-00667-WHA (N.D. Cal.), approved by Judge Alsup in 2012. *Id.*, ECF 238. These rates are thus slightly below market, as they have not increased in two years.

8. Ms. Robertson's declaration and exhibits establish that Class Counsel deducted from their fee calculations time devoted to absent class member damages and the 2012 interlocutory appeal. With those deductions, Class Counsel's fees total $13,742,971.25. To arrive at their lodestar, Class Counsel applied an across-the-board 20% reduction, to arrive at a lodestar of $10,994,377.00. The amount Class Counsel requests in fees -- $5,175,000 -- is less than half of that lodestar, or an overall 60% reduction from their full fees.

9. Ms. Robertson's declaration also attached a summary of Class Counsel's out-of-pocket costs, showing the types of expenses incurred, and demonstrating that the total was $1,017,408.04.

10. In the Settlement Agreement, TBC agreed to pay $5,375,000 in damages and attorneys' fees and costs, and agreed to support Class Counsel's request for attorneys' fees and costs up to the amount of $5,175,000. Even where a settlement agreement provides for fees and a defendant commits to support them, in the class action context, a court must still ensure that the attorney's fees and costs awarded are "fundamentally fair, adequate, and reasonable." *See Staton v. Boeing, Co.*, 327 F. 3d 938, 963-64 (9th Cir. 2003). In this case, the amount that Class Counsel agreed to accept is far less than their lodestar, making it eminently fair, reasonable, and adequate for the class.

11. Title III of the ADA provides for an award of reasonable attorneys' fees and costs to prevailing parties, 42 U.S.C. § 12205, as do Unruh and the CDPA, Cal. Civ. Code §§ 52(b)(3); 54.3(a). "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . . [T]he lodestar method

yields a fee that is presumptively sufficient to achieve this objective." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010) (citations omitted).  "[U]nder federal fee-shifting statutes 'the lodestar approach' is the guiding light' in determining a 'reasonable' fee.  Under that method, the court first determines the appropriate hourly rate for the work performed, and then multiplies that amount by the number of hours properly expended in doing the work." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) (*citing Perdue*.)

12. Although this Court must "'provide a concise but clear explanation of its reasons for the fee award,' [this] merely obliges the court 'to give at least some indication of how it arrived at the amount of compensable hours for which fees were awarded to allow for meaningful appellate review.'  The court is not 'required to set forth an hour-by-hour analysis of the fee request[,] ... [and] when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995) (citations omitted).

13. Here, Class Counsel have voluntarily eliminated all time devoted towards the unsuccessful interlocutory appeal, as well as the class member damages claims, and have further cut their lodestar by a 20% across-the-board reduction as part of their billing judgment.  The resulting lodestar of $10,994,377.00 is well supported by applicable precedent. *See, e.g., Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (finding that 15% across-the-board reduction was appropriate where there was no exercise of billing judgment); *Fortson v. Marriott Int'l, Inc.*, 2013 WL 1832411, at *8 (N.D. Cal. May 1, 2013) (Where "there is no evidence that . . . counsel made any reduction in the hours that it billed," the "approach that the courts in this district have taken . . . is a ten-percent across-the-board reduction in fees to reflect the ordinary exercise of billing judgment.").  The twenty percent reduction applied by Class Counsel more than accounts for any billing judgment.

14. In any event, the actual amount sought by Class Counsel -- $5,175,000 -- is significantly less even than this amount, and is approved as reasonable.

1      15.    Although the calculations above do not take costs into account, the Court has
2  reviewed Exhibit 3 to Ms. Robertson's declaration and holds that the costs incurred were
3  reasonable as well.
4      16.    It is therefore ORDERED that Class Counsel be awarded $5,175,000 in
5  reasonable attorneys' fees and costs in accordance with the Settlement Agreement.

7  IT IS SO ORDERED.

9  DATED: 9/24/14

The Hon. Phyllis J. Hamilton
United States District Court

*IT IS SO ORDERED*
*Judge Phyllis J. Hamilton*

Case No. C 02 05849 PJH NC
[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR
AN AWARD OF ATTORNEYS' FEES AND COSTS    Page 5